## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Malcolm Muhammad,<br>  Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:19cv746 (LO/JFA) |
| | ) | |
| William Jarrett, et al., | ) | |
|   Defendants. | ) | |

### MEMORANDUM OPINION

Under consideration is a motion to dismiss filed by defendants William Jarrett, Gregory

L. Holloway, R. Woodson, Chaplain William Jackson, Chaplain Patrick Jones, E. Witt, and

Teresa Harvey and joined by defendants Queen Goodwyn and Stacie Turner. See Dkt. Nos. 44-

45, 66-68.[1]  Defendants' motion is filed under Rule 12(b)(6) of the Federal Rules of Civil

Procedure and argues that the allegations in plaintiff's amended complaint [Dkt. No. 7] are

insufficient to support his claims for relief under the First, Eighth, and Fourteenth Amendments

as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[2]  Plaintiff was

provided the notice required by Local Rule 7(K) and the opportunity to file responsive materials

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and opposes defendants' motion.

See Dkt. Nos. 50, 70.

---

[1] Defendants Goodwyn and Turner have filed a motion to dismiss of their own in which they
claim not to have acted under the color of state law and additionally state that "they remain
entitled to dismissal for the same reasons as Co-Defendants." See Dkt. No. 68.  Accordingly,
they have "adopt[ed] and incorporate[d] by reference the Co-Defendants' Motion and supporting
Memorandum as it relates to the claims against them." Id.

[2] Defendants, however, simultaneously appear to concede that at least some claims raised against
defendants Jackson and Jones will survive the instant motion.  See Dkt. No. 45 (requesting
dismissal only of claims for injunctive relief against defendants Jackson and Jones as well as
claims raised against them in their official capacity).

## I. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses.[3] <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Nemer Chevrolet, Ltd. v. Consumeraffairs.com Inc.</u>, 591 F.3d 250, 256 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 678). A plaintiff must allege facts in support of each element of each claim he or she raises; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. <u>Iqbal</u>, 556 U.S. at 678.

## II. Background

It bears noting that rearticulating the allegations in the amended complaint was made difficult by plaintiff's use of stilted language and his decision to state facts only by alleging the content of informal complaints and grievances he claims to have filed. Indeed, as defendants note, plaintiff "makes no direct allegations regarding the substance of his claims." <u>See</u> Dkt. No. 45, n.4. What follows, then, is the Court's best attempt to construe the assertions plaintiff claims

---

[3] Plaintiff appears to misunderstand the basis of defendants' Rule 12(b)(6) motion. Because such a motion "tests the sufficiency of a complaint," <u>see</u> <u>Martin</u>, 980 F.2d at 952, the mountain of documentary evidence plaintiff has submitted in opposition to defendants' motion is irrelevant to the adjudication of the matter at hand.

to have made in grievances as substantive allegations of fact.  So construed, the following

allegations are assumed true for the purpose of ruling on defendants' motion to dismiss.

Plaintiff Malcolm Muhammad is an adherent of the Nation of Islam ("NOI") faith who

was incarcerated at Sussex I State Prison ("SISP") at all times relevant to this suit.  Dkt. No. 7

("Am. Compl.") ¶¶ 4, 22.  Plaintiff was transferred to Keen Mountain Correctional Center

("KMCC") in February 2020.  See Dkt. No. 22.[4]

<u>*Allegations Regarding Nation of Islam Videotapes*</u>

On September 24, 2017, plaintiff sent a request to defendant Jackson asking to be

provided approved NOI "video tapes."  Dkt. No. 7 ("Am. Compl.") ¶ 1.  On September 27, he

filed an informal complaint requesting the same.  Id.  Jackson responded to plaintiff's requests,

stating, "There are no approved NOI videos for the NOI program."  Id.  Plaintiff grieved this

response, and his grievance was denied on October 11; the denial stated that plaintiff had not

been affected personally.  Id.  This decision was upheld on appeal.  Id. at ¶ 3.

Plaintiff filed another request on October 8, inquiring what had happened to NOI videos

"that was approved in [Jackson's] office?"  Id. at ¶ 2.  Jackson responded, stating on this

occasion, "Now there are limited videos for the NOI."  Id.  Plaintiff filed yet another request on

October 12, to which Jackson responded that there were no "new" videos for NOI offenders.  Id.

On November 4, 2017, plaintiff filed yet another grievance regarding NOI videos.  Id.

Defendant Witt responded to the grievance, asking plaintiff to specify the dates on which his

requests for the videos were denied.  Id.  Plaintiff replied with the dates requested, and Witt

responded on November 13 that the period for filing his grievance had expired.  Id.  Plaintiff

---

[4] The Court takes judicial notice of plaintiff's institutional transfer.  See Tellabs, Inc. v. Makor
Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (noting that a court may consider matters subject
to judicial notice when considering a motion to dismiss under Rule 12(b)(6)).

received the grievance response on November 17 and appealed the decision one day later. Id. On November 28, plaintiff received a denial of his appeal, accompanied by a response which stated that plaintiff had not acted within the five-day appeal period. Id.

On January 20, 2018, plaintiff filed another request for NOI videos. Id. at ¶ 4. Jackson responded on January 26, stating that he was not in possession of any approved videos. Id. Plaintiff filed a grievance on February 1; defendant Witt denied the grievance on February 5 as an improper request for service. Id. Plaintiff appealed the decision, but the decision was upheld on appeal. Id.

On February 24, 2018, plaintiff submitted yet another request for NOI videos relevant to Black History Month. Id. at ¶ 8. Jackson responded on March 6 that his office did not possess any approved NOI videos. Id. Plaintiff grieved this response; the grievance was denied on March 14 by defendant Witt, who stated that the issue did not affect plaintiff personally and found that plaintiff had not actually been denied the videos because Jackson did not possess the videos in the first instance. Id. Plaintiff appealed, but the decision was again upheld. Id.

### Allegations Regarding 2018 Savior's Day Accommodations

On February 26, 2018, plaintiff complained to defendant Jackson that he had not been allowed to celebrate "Savior's Day," an NOI holiday. Id. at ¶ 5. Jackson responded on March 6, stating that a memo had been sent to the facility regarding the holiday. Id. Muhammad filed a grievance on the issue, which defendant Witt responded to on March 14, stating that plaintiff was not entitled to a celebratory Savior's Day meal that was in any way different from his regular meals. Id. Plaintiff appealed the decision, and, on March 21, the regional officer overturned Witt's response and referred the grievance to the Warden's office. Id. at ¶¶ 5-6. Defendant Jarrett responded, stating that there was no evidence plaintiff had not been served a celebratory

4

meal but also finding that no celebration had occurred. Id. at ¶ 6. Plaintiff appealed the decision, which defendant Holloway upheld on May 8. Id.

The same day plaintiff initially complained to defendant Jackson regarding Savior's Day, he filed an informal complaint to defendants Goodwyn and Turner, who did not respond to the complaint in the timeline envisioned by Virginia Department of Corrections ("VDOC") policy. Id. at ¶ 7. Plaintiff grieved the non-response on March 20. The grievance was denied as duplicative of the grievance filed with respect to defendant Jackson's Savior's Day response. Id. Plaintiff states that defendants Jarrett and Holloway later responded to the complaint, but plaintiff does not allege the manner in which they did so. Id.

Plaintiff filed another informal complaint with defendant Jackson on May 30, 2018, asking him to investigate why no Savior's Day feast had taken place that year. Id. at ¶ 9. Jackson responded on June 14, stating that he had delivered memos regarding Savior's Day and could not determine why no observance had actually occurred. Id. Plaintiff appealed the decision. Witt responded on June 25, stating that the time period for filing had expired. Id. Woodson upheld the determination on appeal. Id.

### Allegations Regarding 2019 Savior's Day Accommodations

On February 26, 2019, plaintiff filed two informal complaints: one stating that he was again denied the ability to celebrate Savior's Day, and another stating that he was denied a "regular feast meal after the prayer service of Master Fard Muhammad's Birthday." Id. at ¶ 12. He wrote to Witt and another unnamed official requesting grievance receipts, which he did not receive. Id. He then wrote a letter to the VDOC regional office indicating he had not received the receipts he had requested. Id. at ¶ 13. Woodson responded, instructing plaintiff to file another informal complaint. Id. at ¶ 14.

5

On March 5, plaintiff filed two or three[5] more informal complaints regarding the same issues he complained of on February 26. Id. at ¶ 15. These complaints were directed to defendants Jones, Goodwyn, and Turner. Id. at ¶¶ 15-16. Jones responded to one complaint, stating that "he would establish another Savior Day Celebration on another day." Id. at ¶ 15. Plaintiff grieved the response. Defendant Witt denied the grievance, finding that it raised "more than one issue."[6] Id. Defendants Goodwyn and Turner did not respond to the informal complaints directed at them. Id. at ¶ 16. Plaintiff grieved the non-response, and Witt denied the grievance. Id. Plaintiff has written letters to the VDOC regional office and claims that defendant Harvey has merely "turn[ed] the blind eye" to plaintiff's allegations. Id.

On March 29, plaintiff appealed Witt's denial of his grievances concerning the 2019 Savior's Day, along with her earlier denial of grievance receipts, to the regional office. Woodson rejected his appeals, stating that he needed to follow informal complaint procedures. Id. at ¶¶ 17, 19.

---

[5] It is unclear whether plaintiff filed two or three complaints on this date due to the imprecise nature of plaintiff's language. In paragraph fifteen, plaintiff claims to have filed two informal complaints on March 5, complaints regarding the two issues he grieved on February 26. See Am. Compl. ¶ 15. In paragraph sixteen, he claims to have "also filed on 03/05/19 a second informal complaint to defendants Goodwyn and Turner." Id. at ¶ 16. It is therefore unclear whether the "second informal complaint" directed to Goodwyn and Turner was the second complaint referenced in paragraph fifteen or if plaintiff intended to state that he filed a third complaint on that date that happened to be the second complaint directed to Goodwyn and Turner. This unclear description is emblematic of the complaint as a whole, which is difficult to interpret and organized neither chronologically nor by claim.

[6] Plaintiff characterizes this action as retaliatory in nature. Because this constitutes a legal conclusion, it is not included in the list of facts on which the motion to dismiss will be adjudicated. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (In adjudicating a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.").

Plaintiff additionally claims to have made at unspecified times "several complaints to defendant Turner" regarding an alleged denial of his common fare religious diet. Id. at ¶ 18. He specifically states, verbatim, as follows:

> Plaintiff was being denied his common fare religious diet fruits and juices due to Food Service place these items within a food cart with "plastic-bags wrapped around the food carts doors for security locks and when the food carts are pushed to the building by offenders, the fruits and juices are taken from the carts and when officials request food service for these items, food service would not allow any more fruits or juices pass out for the missing items, which imposes a substantial burden on plaintiff religious diet and free exercise of religion

Id. at ¶ 18.  Turner apparently responded to this complaint on March 23, 2019, stating that "no special date" was set up for the Savior's Day meal. Id. at ¶ 20.

### Allegations Regarding Grievances and Retaliation

On December 19, 2018, plaintiff filed an informal complaint, alleging that Witt's responses to his grievances were retaliatory in nature. Id. at ¶ 10.  Witt responded, stating that plaintiff had not explained how he was being retaliated against and informed plaintiff he could appeal the decision. Id.  Plaintiff did appeal, but Witt's decision was upheld by Woodson. Id.

On January 22, 2019, plaintiff filed a grievance stating that Witt had "falsified" and changed what he had written in an informal complaint. Id. at ¶ 11.  Witt responded, stating that the words she used "may not have been the exact words you wrote down." Id.  Plaintiff filed a grievance and appealed the denial, but, on February 19, 2019, Woodson upheld the decision, finding that plaintiff had suffered no personal loss or harm. Id.

Plaintiff has on more than one unspecified date written letters to the VDOC regional office and to defendant Harvey, complaining of Witt and Woodson's handling of his grievances. Despite these letters, no corrective action has been taken. Id. at ¶¶ 16, 21.

7

### III. Analysis

Plaintiff's list of claims is disorganized and separates issues that are logically combined.

The Court interprets the complaint as seeking relief on the four following bases:

1. Defendants Jackson, Woodson, and Witt failed to provide plaintiff with NOI videos, denying plaintiff the ability to practice his religion, thereby violating the First and Fourteenth Amendments in addition to RLUIPA. Am. Compl. ¶¶ 23, 25.

2. Defendants Goodwyn, Turner, Jackson, Jarrett, and Holloway failed to provide a feast meal and other accommodations for the NOI holiday of Savior's Day in 2018, thereby violating the First and Fourteenth Amendments in addition to RLUIPA. Am. Compl. ¶ 24.

3. Defendants Jones, Goodwyn, and Turner failed provide a feast meal for the NOI holiday of Savior's Day in 2019 and failed to meet plaintiff's religious dietary needs by failing to secure food carts, thereby violating the First and Fourteenth Amendments as well as RLUIPA. Am. Compl. ¶ 28.

4. Defendant Witt retaliated against plaintiff for filing grievances, acts which defendants Woodson and Harvey failed to correct, thereby violating the First, Eighth, and Fourteenth Amendments. Am. Compl. ¶¶ 26, 27.

### A.     <u>Limitation of Remedies</u>

Defendants begin their analysis by arguing that plaintiff is foreclosed from some of the relief he seeks in this action. Defendants are correct. For the reasons explained below, in this action, plaintiff is limited to the provision of monetary relief from defendants sued in their individual capacities.

#### *1.     Official and Individual Capacity Claims*

Defendants first argue that plaintiff is not entitled to any monetary damages from defendants to the extent he seeks to sue them in their official capacities. They additionally argue that plaintiff is not entitled to any injunctive relief from defendants *except* to the extent he sues

them in their official capacities. See Dkt. No. 45. Plaintiff, unsurprisingly, takes an adverse position.

Plaintiff's arguments fall flat, for it is well established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and is "no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Accordingly, the Eleventh Amendment bars plaintiff's claims for monetary damages against defendants in their official capacities. Cf. Fauconier v. Clarke, 966 F.3d 265, 279-280 (4th Cir. 2020) (affirming district court dismissal of claims for money damages raised against state employees in official capacities).

It is equally clear that defendants are not subject to suit under § 1983 for injunctive or declaratory relief in their individual capacities. See Brown v. Montoya, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (noting that while the defense of official immunity is applicable only to liability for damages, section 1983 does not permit injunctive relief against state officials sued in their individual capacities).

### 2.    *RLUIPA*

Citing Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009), and Sossaman v. Texas, 563 U.S. 277, 285-86 (2011), defendants next assert that plaintiff is not entitled to any monetary relief for his RLUIPA claims. Defendants' position is correct. It is noted, however, that these cases interpreted RLUIPA as enacted pursuant to the Constitution's Spending Clause and explicitly declined to assess whether individual capacity claims for monetary damages would be permissible if assessed under the subsection of RLUIPA which invokes the language of the

Commerce Clause. See 42 U.S.C. § 2000cc-1(b) (RLUIPA applies whenever "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.").

Reading Rendelman as leaving individual capacity damage claims potentially available, plaintiff baldly asserts that "defendants' actions violated RLUIPA when it affected interstate commerce," entitling him to collect monetary damages from defendants in their individual capacities. See Dkt. No. 50, pp. 10-11. Unfortunately for plaintiff, his complaint is bereft of allegations that would support any inference of interstate commercial impact, and the conclusory statement in his opposition is too little and too late to salvage the claim. See Hooker v. Disbrow, No. 1:16cv1588, 2017 WL 1377696, at *4 (E.D. Va. Apr. 13, 2017) (A district court need not consider "new allegations or new facts" that were available to the plaintiff when it filed the complaint but were only introduced "in an opposition to a defendants' motion to dismiss.") (citing Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008)). Because plaintiff has not satisfactorily alleged that he would even abstractly be entitled to such relief, this Court elects to mirror the Fourth Circuit in Rendelman, declining to assess whether RLUIPA, analyzed under the Commerce Clause, would authorize individual capacity damages claims.

In light of the above, it is clear that plaintiff is limited to the receipt of injunctive or declaratory relief with respect to his RLUIPA claims.

3.    *Injunctive Relief, Declaratory Relief, and Mootness*

Defendants next assert that plaintiff's requested injunctive relief—the provision of "security locks on food carts" at SISP—is not tailored to the claims he asserts and is, in any respect, moot. Opposing the argument, plaintiff states without any supporting argument that the

10

relief he seeks *is*, in fact, appropriately tailored to his claims. See Dkt. No. 50, p. 12. The Court, however, needs not consider the relationship between plaintiff's claims and his requested injunctive relief because defendants are correct that plaintiff's transfer from SISP to KMCC has rendered his claims for injunctive and declaratory relief moot. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer to different prison rendered moot prisoner's claims for injunctive and declaratory relief with respect to time at original institution).

4.   *Summary of Available Remedies*

Plaintiff is foreclosed from obtaining injunctive or declaratory relief by virtue of the fact that his claims for these forms of relief are moot. Nor can plaintiff obtain any relief—injunctive, declaratory, or monetary—under RLUIPA. Finally, it is clear that plaintiff is foreclosed from obtaining monetary relief from defendants to the extent they are sued in the individual capacities. Accordingly, the only relief to which plaintiff may demonstrate an entitlement is monetary relief obtained from defendants sued in their individual capacities.

**B    Claims One, Two, and Three – Free Exercise[7]**

---

[7] Plaintiff sought relief under RLUIPA with respect to Claims One, Two, and Three. As noted above, however, it is clear that plaintiff is not entitled to any such relief, and these subsections therefore do not address this body of law. Similarly, although plaintiff asserts that he is entitled to relief under the Fourteenth and Eighth Amendments for defendants' actions, it is clear that his arguments are more firmly rooted in the First Amendment. "Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994). Accordingly, here, where plaintiff's claims obviously invoke the Free Exercise Clause and First Amendment retaliation doctrine, this Court declines to consider the claims under the Eighth and Fourteenth Amendments as requested by plaintiff.

Claim One charges defendants Jackson, Woodson, and Witt with failing to provide plaintiff with NOI videos and thereby denying him the ability to practice his religion. Claim Two charges defendants Goodwyn, Turner, Jackson, Jarrett, and Holloway with failing to provide a feast meal and other accommodations for the NOI holiday of Savior's Day in 2018, thereby violating the First Amendment. Finally, Claim Three charges defendants Jones, Goodwyn, and Turner with failing to provide a feast meal for the NOI holiday of Savior's Day in 2019 and failing to meet plaintiff's religious dietary needs by failing to secure the contents of food carts, thereby violating the First Amendment.

Defendants do not argue that plaintiff has failed to state a claim against defendant Jackson or Jones in these claims, and this case shall accordingly proceed against these two defendants, at least to that extent. The allegations with respect to defendants Goodwyn, Turner, Jarrett, Woodson, Witt and Holloway, however, are clearly insufficient to support viable causes of action. Indeed, plaintiff does not allege that these defendants were responsible for and failed to provide him with the NOI videos he requested or the Savior's Day Celebrations in 2018 and 2019. Instead, plaintiff's allegations against these defendants reduce to claims regarding the institutional grievance process. In sum, plaintiff claims that defendants Witt, Goodwyn, and Turner at various times denied or failed to respond to his grievances. He similarly claims that defendants Woodson, Jarrett, and Holloway, in most cases, upheld the denials of those grievances.

These allegations simply do not suffice to support First Amendment claims against these six defendants. See, e.g., George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation.") In fact, inmates do not have a constitutionally protected right to participate in the

12

grievance procedure in the first instance.  See, e.g., Adams v. Rice, 40 F.3d 72, 75 (4th Cir.

1994).  Accordingly, defendants Goodwyn, Turner, Jarrett, Holloway, Witt and Woodson are not

liable under § 1983 for their responses to plaintiff's grievances or appeals.  See Brown v. Va.

Dep't Corr., No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227 at *8, 2009 WL 87459, at *13 (W.D.

Va. Jan. 9, 2009); see also Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that

allegations that prison officials and administrators responded inappropriately to inmate's later-

filed grievances do not establish the involvement of those officials and administrators in the

alleged underlying deprivation).  Absent allegations that support a finding that these defendants

themselves acted to directly deprive plaintiff of his First Amendment rights, these claims may

not proceed.

## C.    Claim Four – First Amendment Retaliation

Claim Four charges defendants Witt, Woodson, and Harvey with First Amendment

retaliation related to the handling of plaintiff's grievances and appeals.  Although retaliation "is

not expressly referred to in the Constitution, [it] is nonetheless actionable [under § 1983] because

retaliatory actions may tend to chill individuals' exercise of constitutional rights."  Am. Civil

Liberties Union v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993).  To prevail as to a First

Amendment retaliation claim, a prisoner-plaintiff's complaint must allege facts (1) that the

plaintiff engaged in protected First Amendment activity, (2) that the defendant took some action

that adversely affected the plaintiff's First Amendment rights, and (3) that there was a causal

relationship between plaintiff's protected activity and the defendant's conduct.  Martin v. Duffy,

858 F.3d 239, 249 (4th Cir. 2017).

With respect to the first element, it is well settled that prison officials may not retaliate

against an inmate for filing a prison grievance.  See Booker v. S.C. Dep't of Corr., 855 F.3d 533,

13

545 (4th Cir. 2017). Plaintiff's allegations, however, fall short of satisfying the second two elements of the Martin test. "[A] plaintiff suffers adverse action" and thereby satisfies the second element of a retaliation claim "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin, 858 F.3d at 249. The standard is thus objective and not determined by examining "the actual effect of the retaliatory conduct on a particular plaintiff." See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

Here, with respect to the second element, plaintiff alleges only that Witt denied a bevy of plaintiff's grievances and, in one instance, "falsified" what plaintiff had written in a complaint. Plaintiff alleges, meanwhile, that defendants Woodson and Harvey merely failed to correct the wrongs inflicted at levels below them. These are exactly the sort of bare assertions of retaliation that fail to support a claim of constitutional dimension. Cf. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (finding conclusory and therefore insufficient allegations that defendants' denial of plaintiff's request for placement in protective custody occurred as part of defendants' retaliation scheme). Additionally, as defendants convincingly argue, by plaintiff's own admission, defendant Witt routinely informed plaintiff of his ability to appeal her negative decisions, thereby facilitating rather than deterring the additional filing of appeals. This Court finds that these actions would not deter any individual from filing additional grievances or appeals.

With respect to the third element, as defendants note, there is of course a connection between plaintiff's filing of grievances and defendants' denial of the same. The allegations in the complaint, however, are simply insufficient to support a finding of a causal connection in the First Amendment retaliation context. This is so because the causation analysis includes an individual's motivation in its calculus. See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir.

14

1998); see also Oliver v. Myers, No. 7:08cv558, 2008 WL 5212409, at *2 (W.D. Va. Dec. 12, 2008) (stating that, to succeed as to a retaliation claim, a prisoner-plaintiff "must come forward with specific evidence that *but for the retaliatory motive*, the complained incident … would not have occurred") (emphasis added). Unsupported by any contextual factual allegations, plaintiff's contentions fail to affirmatively support an inference that these three defendants acted with such a motive. See, e.g., Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (holding that an inmate claiming retaliation "must produce direct evidence of motivation or … allege a chronology of events from which retaliation may plausibly be inferred") (citation and quotation omitted).

Nor does the complaint support supervisory liability claims against defendants Woodson and Harvey, who plaintiff does not claim were directly involved in denying his grievances and only affirmed or overturned the decisions of individuals below them in the grievance process. Indeed, finding that the complaint does not support a direct liability claim against defendant Witt, no derivative supervisory claim may lie against Witt's supervisors for Witt's actions. See Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (noting that a claim under § 1983 for supervisory liability may not succeed without a predicate constitutional violation).

Finally, to the extent plaintiff raises such a claim at all, he has failed to establish that defendants are liable to him on the simple basis that they denied his institutional grievances and appeals. See, e.g., DePaola v. Ray, No. 7:12cv139, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (observing that "a superior's after-the-fact denial of a grievance [or response to a letter] falls far short of establishing § 1983 liability") (citing Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)).

***

15

This Court has no doubt that plaintiff was displeased with the outcome of many of the grievances he filed. Unfortunately, his complaint simply does not contain any allegation which allows for an inference that the defendants named in Claim Four denied or altered plaintiff's grievances *because* he had filed them. Nor has the Court identified any authority supporting the notion that the simple denial of grievances and appeals would "deter a person of ordinary firmness" from filing additional appeals in the future. Claim Four is thus dismissed.

## IV. Conclusion

In light of the foregoing, it is clear that defendants' motion to dismiss must be granted except to the extent plaintiff seeks individual capacity monetary damages from defendants Jones and Jackson. In all other respects, plaintiff has failed to state claims upon which relief may be granted. An appropriate Order shall issue.

Entered this 23rd day of December 2020

Alexandria, Virginia

/s/

Liam O'Grady
United States District Judge

16