IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Malcolm Muhammad,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **1:19cv746 (LO/JFA)** |
| ) | |
| **Williams Jarrett, et al.,** ) | |
| **Defendants.** ) | |

MEMORANDUM OPINION

Defendants William Jackson and Patrick Jones, the former and current chaplains, respectively, at Sussex I State Prison ("Sussex I" or "the prison") move for summary judgment on the remaining claims against them in this civil-rights suit claiming, as relevant here, that the chaplains violated plaintiff Malcolm Muhammad's right to exercise his religion freely while incarcerated at Sussex I. [Dkt. No. 81]. Muhammad, who is proceeding pro se, has received the notice required under Roseboro v. Garrison, 528 F.2d 309 (8th Cir. 1975), and Local Civil Rule 7(K) [Dkt. No. 83], and he opposes defendants' motion [Dkt. Nos. 86–88]. Because the undisputed record establishes that neither Jackson nor Jones violated Muhammad's rights under the Free Exercise Clause of the First Amendment, defendants' motion for summary judgment will be granted.[1]

I. Procedural History

Muhammad, a member of the Nation of Islam ("NOI"), brought claims under the First, Eighth, and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act (RLUIPA) against Jackson, Jones, and seven others who worked at Sussex I or within the

---

[1] Before filing his opposition to defendants' motion for summary judgment, Muhammad moved for an extension of time. [Dkt. No. 85]. The motion will be granted nunc pro tunc through an order that will issue alongside this Memorandum Opinion.

Virginia Department of Corrections ("VDOC"). [Dkt. No. 7, Operative Compl.]. Defendants moved to dismiss the complaint. [Dkt. Nos. 44, 66]. The Court granted the motions in part, disposing of all of plaintiff's claims except for the First Amendment claims seeking monetary damages against Jackson and Jones in their individual capacities. [Dkt. No. 74]. Defendants now move for summary judgment on the surviving claims. [Dkt. Nos. 81–82].

## II. Summary Judgment Evidence

Muhammad is a member of the Nation of Islam. [Dkt. No. 88, Muhammad Summary J. Aff. ¶ 3]. The following facts, viewed in the light most favorable to plaintiff, the nonmoving party, see Evans v. Int'l Paper Co., 936 F.3d 183, 191 (4th Cir. 2019), relate to Muhammad's claims that his First Amendment right to exercise his religion freely was violated in the following three ways: (1) Jackson denied Muhammad access to NOI religious videos; (2) Jackson failed to provide a service and feast meal for the NOI holiday of Savior's Day in 2018; and (3) Jones failed to provide a service and feast meal for Savior's Day in 2019. Disputes of fact are noted where present.

### A) Evidence related to NOI Videos

Muhammad avers that he submitted to former-chaplain Jackson requests for NOI videos related to black history month and Savior's day, and he has put into the record grievances he filed beginning in November 2017 purporting to show his efforts to obtain those videos. [Dkt. No. 88, Muhammad Summary J. Aff. ¶ 4; Dkt. No. 51]. Jackson, who was the chaplain at Sussex I from March 1, 2002 to July 31, 2018, attests by affidavit that "Muhammad had requested videos that were not on file in the Chaplain's office, and I informed him of this." [Jackson Aff. ¶¶ 1, 4]. Jackson adds that "[i]f a requested video were on file in the Chaplain's office, it would have been made available for Muhammad to view." [Id. ¶ 4].

2

**B) Evidence Related to Savior's Day Programming**

Muhammad authored an affidavit in which he attests that observing Savior's Day involves a prayer service, during which a portion of the Holy Quran is read, followed by a feast group meal. [Muhammad Summary J. Aff. ¶ 6.]. He has also submitted affidavits from two other NOI inmates housed at Sussex I during the period relevant to this lawsuit, each of whom attest that for Savior's Day in 2018 and 2019, the NOI inmates were not provided with a prayer service or celebratory feast meal. [Dkt. No. 51, Myles Aff. ¶ 3 & Carter Aff. ¶ 5].

Jackson has submitted as evidence (1) an affidavit he authored; (2) a copy of VDOC Operating Procedure ("OP") § 841.3 (in effect on Savior's Day 2018), which governs inmate religious programs; (3) the Master Religious Calendar in effect on Savior's Day 2018; and (4) a memorandum from Chief of Corrections Operations A. David Robinson related to first-quarter 2018 religious holidays. [Jackson Aff. Enclosure A, B, C]. OP § 841.3 specifies that "although each offender has the right to worship in their chosen manner, levels of offender participation and availability of facility resources and religious leaders do not permit separate services for every possible form of worship at every facility." OP § 841.3(IV)(C)(1). The provision further directs the Chief of Corrections Operations to issue a memorandum "as each holy day/season approaches announcing the eligible religions and dates for observance," using the Master Religious Calendar as a guide. Id. § 841.3(IV)(C)(2). In Robinson's December 5, 2017, memorandum sent to VDOC wardens and superintendents, he communicates that Savior's Day is approved for NOI inmates to observe on February 26, 2018 and directs them to the Master Religious Calendar to find "[s]pecific information concerning the provision of meals, fasting, services, and any work restrictions." [Jackson Aff. Enclosure C]. The Master Religious Calendar states that for the Savior's Day holiday, NOI inmates are authorized to have a group meal (lunch

3

or dinner from the regular menu without pork) separate from other general population and a special meeting or observance in conjunction with, or separate from, that meal. [Jackson Aff. Enclosure B].

In his affidavit, former-chaplain Jackson attests that his sole responsibility for organizing Savior's Day activities was to place NOI inmate names on the "Master Pass List." [Jackson Aff. ¶ 6]. The Master Pass List is a list of inmates that have signed up for regular, ongoing activities for a specified religion. VDOC OP § 841.3(IV)(A)(2)(b). Jackson further avers that he was not directly involved in planning the group meal; rather, he attests that food service and security staff would have been responsible for organizing the meal. [Jackson Aff. ¶ 6]. He adds that he did not have the authority to require other accommodations to be made for NOI inmates to celebrate Savior's Day. [Id.]. Finally, he attests that he did not personally observe an NOI group meal for Savior's Day in 2018, but "I have no reason to believe that this accommodation was not provided." [Id.].

Jones, who began serving as a chaplain at Sussex I on September 4, 2018, also submitted an affidavit, the memorandum from Chief of Corrections Operations Robinson related to the holy day/season for first-quarter 2019, and that year's Master Religious Calendar. [Jones Aff. Enclosures A & B]. Robinson's December 7, 2018, memorandum broadcasts that Savior's Day is to be observed on February 26, 2019, and directs the VDOC wardens and superintendent to the Master Religious Calendar for information about meals, fasting, services, and work restrictions. [Jones Enclosure B]. The Master Religious Calendar, again, states that NOI observants are authorized to have a group meal (lunch or dinner from the regular menu without pork) separate from general population inmates and a special meeting or observance in conjunction with, or separate from, that meal. [Id.].

4

Jones also authored an affidavit attesting to how Savior's Day programming is scheduled at Sussex I. Typically, he avers, a VDOC staff member enters into the VDOC inmate case management system, known as CORIS, all of the parameters for the program, after which the chaplain would enter the NOI inmates' names for security to cross-check against the Master Pass List. [Jones Aff. ¶¶ 6–7]. He further avers that, "[f]or reasons unknown to me, the Savior's Day program was not set up in CORIS in 2019," and "[t]o the best of my knowledge, the Savior's Day program was omitted from the calendar due to inadvertence." [Id. ¶ 7]. Jones offered Muhammad a "make-up service for Savior's Day as soon as it was discovered that accommodations had not been made for gathering on February 26, 2019." [Id. ¶ 8]. Muhammad avers that he declined the make-up celebration in 2019 because "[n]o member of the Nation of Islam can add or change the date . . . to be celebrated for another day." [Muhammad Summary J. Aff. ¶¶ 5, 12].

### III. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

## IV. Analysis

### A. Claim (1): NOI Videos

Defendants first argue that Muhammad has not put forth evidence demonstrating that his inability to view the NOI videos amounted to a substantial burden on his religious practice, and thus, they are entitled to judgment as a matter of law.

The Court agrees. As a threshold matter, an inmate pursuing a claim under the First Amendment's Free Exercise Clause must put forth evidence demonstrating that "(1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Wilcox v. Brown, 877 F.3d 161, 168 (4th Cir. 2017). A substantial burden in placed on an inmate when "a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Bethel World Outreach Ministries v. Montgomery Cnty. Council, 706 F.3d 548, 555 (4th Cir. 2013) (internal quotation marks, citation, and alteration omitted). Muhammad has not demonstrated, let alone even explained, how he purportedly was substantially pressured to modify his behavior and violate his religious beliefs when he could not view the requested NOI videos. At most, he has divulged that the videos are related to black history month and Savior's Day, but he makes no mention of their significance in exercising his faith. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Weaver v. Champion Petfoods USA Inc., 3 F.4th 927, 938 (7th Cir. 2021) (internal citation omitted). Because Muhammad has not submitted any evidence from which a factfinder could accept that Jackson placed a substantial burden on Muhammad's religious exercise, defendants motion for summary judgment on the NOI video claim will be granted. Krieger v. Brown, 496 F. App'x 322, 326 (4th

Cir. 2012) (opining that district court did not err in concluding that prisoner-plaintiff failed to produce sufficient evidence to support claim that prison inflicted substantial burden on religious exercise when plaintiff made only "blanket assertion" that requested religious items denied "were 'necessary' to perform 'well-established rituals.'").

### B) Claims (2) & (3): Savior's Day Accommodations in 2018 and 2019

Defendants next argue that the undisputed facts do not demonstrate that either Jackson or Jones were personally involved in arranging the Savior's Day programming and, thus, even assuming arguendo that Muhammad's First Amendment right to exercise his religion freely had been violated, defendants cannot be held accountable under § 1983. In support of their argument, defendants first point to Jackson's testimony in which he avers that he was not in charge of Savior's Day programming beyond entering the names of NOI inmates into the Master Pass List. Second, they highlight Jones's testimony attesting that he does not know why the holiday was not set up in CORIS in 2019.

In § 1983 actions "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights," Wilcox, 877 F.3d at 170, and Muhammad has not put forth evidence that disputes defendants' sworn testimony. In particular, Muhammad had not submitted any evidence to directly contradict Jackson's testimony that he was not responsible for organizing any Savior's Day programming outside of entering names into the Master Pass List and Jones's testimony that he was not involved with the CORIS mishap. Instead, Muhammad attempts to create a material dispute of fact by pointing to VDOC operating procedures that detail job duties of institutional chaplains. One provision states that chaplains "shall serve as an advocate for equitable accommodation of all religious faiths." VDOC OP § 841.3(IV)(A)(6) (effective 2018 and 2019). Another provision Muhammad cites

7

states that "Chaplains maintain oversight and scheduling ability for day to day operations of religious groups within their facilities." Id. § 841.3(IV)(A)(6)(g)(i) (effective 2018 and 2019). In Muhammad's view, a reasonable jury could conclude that these provisions cast doubt on the chaplains' testimony that they were not involved in facilitating the Savior's Day programming in 2018 and 2019 and accept his version of events. But even assuming the chaplains, in practice, were not personally handling all the responsibilities envisioned by OP § 841.3, there is no evidence in the record to establish that either defendant acted intentionally to deprive Muhammad of his ability to celebrate Savior's Day. And "only intentional conduct is actionable under the Free Exercise Clause." Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006). At most, an inference can be raised that the chaplains were negligently performing their job duties. But "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." Id. Therefore, summary judgment in defendants' favor is warranted for Muhammad's claims related to Savior's Day accommodations in 2018 and 2019.

## V. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the defendants' motion for summary judgment [Dkt. No. 81] will be granted.

The Clerk is directed to send a copy of this Order to plaintiff and to counsel of record for defendants.

Entered this 23rd day of August 2021.

Alexandria, Virginia

/s/ 
Liam O'Grady
United States District Judge